**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**THIRD DIVISION**

| | |
|---|---|
| Workers' Compensation Reinsurance Association and Minnesota Workers' Compensation Insurers Association, Inc., | Civil File No. 07-3371 JNE/AJB |
| Plaintiffs, | |
| vs. | **REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS** |
| American International Group, Inc., AIU Insurance Company, AIG Casualty (formerly Birmingham Fire Insurance Company of Pennsylvania), American Home Assurance Company, Commerce & Industry Insurance Company, Granite State Insurance Company, Illinois National Insurance Company, National Union Fire Insurance Company of Pittsburg, PA, New Hampshire Insurance Company, The Insurance Company of the State of Pennsylvania, | |
| Defendants, | |

This matter is before the Court, United States Magistrate Judge Arthur J. Boylan, on the defendants' joint motion to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(6), failure to state at claim upon which relief can be granted[1] [Docket No. 13]. Hearing on the motion was held on November 27, 2007, at the U.S. Courthouse, 180 East Fifth Street, St. Paul, MN 55101. Thomas E.

---

[1] The motion also cites Fed. R. Civ. P. 9(b), failure to state a fraud claim with sufficient particularity as a basis for dismissal of claims. To the extent Rule 9(b) is discussed in this motion it is limited to defendants' opposition to plaintiffs' contention that the statute of limitations on their unjust enrichment claim should be equitably tolled because of fraud. In light of the court's determination that an unjust enrichment claim should be dismissed, the court does not reach the statute of limitations, or Rule 9(b) issues.

Harms, Esq., Michael J. Bleck, Esq., and Aaron Mills Scott, Esq., appeared on behalf of the plaintiffs. Robert R. Weinstine, Esq., William A. McNab, Esq., and David M. Aafedt, Esq., appeared on behalf of the defendants. The matter has been referred to the magistrate judge for report and recommendation under 28 U.S.C. §636(b)(1).

**Parties and Claims**

Plaintiff Workers' Compensation Reinsurance Association ("WCRA") is a legislatively created association established to provide reinsurance for Minnesota workers' compensation insurers and self-insured employers. Plaintiff Minnesota Workers' Compensation Insurers Association, Inc. ("MWCIA") is a data collection and data services corporation whose members are workers' compensation insurers which are required to provide workers' compensation premium data to the association. Reported information is used to determine the proportionate amounts of reinsurance premiums payable by workers' compensation insurers to WCRA and to calculate operations assessments to MWCIA members. Defendants in this action are providers of workers compensation insurance in Minnesota, and pursuant to Minn. Stat. § 79.34 (reinsurance association) and Minn. Stat. § 79.60(a)(data services organization), all of the defendants are members of the plaintiff organizations.

Plaintiffs commenced this action by complaint alleging fraud claims (Count I) and fraud conspiracy claims (Count II) under Racketeer Influenced and Corrupt Organizations Act ("RICO") provisions at 18 U.S.C. § 1962(c) and § 1962(d). The complaint also alleges unjust enrichment (Count III) and common law fraud (Count IV). Plaintiffs contend that since 1985, the defendant insurers have purposefully understated the amount of standard workers' compensation premiums

received by them for insurance policies sold in Minnesota, thereby causing the defendants to contribute a lower and disproportionate amount to the plaintiffs for reinsurance premiums and operations assessments.

Defendants now move to dismiss the complaint, asserting that plaintiffs cannot establish that they were damaged parties and that plaintiffs therefore lack standing to prosecute the alleged claims. In addition, defendants argue that Counts I and II should be dismissed on grounds that plaintiffs have not identified an enterprise that would be subject to RICO liability, and Count III should be dismissed because an unjust enrichment claim cannot be maintained in an action based on contract.[2] Defendants also insist that unjust enrichment claims are barred, at least in part, by the applicable statute of limitations. Plaintiffs oppose the motion to dismiss. It is the magistrate judge's recommendation that defendants' motion to dismiss be denied with respect to RICO and common law fraud claims; that defendants' motion to dismiss a claim for unjust enrichment be granted; and that the action be allowed to proceed accordingly.

## DISCUSSION

**Standing**

Defendants initially contend that plaintiffs lack standing to litigate this action in federal court because they have not suffered direct injury where any presumed damages would have been suffered by other members of the plaintiff organizations and not by the WCRA and the MWCIA.

---

[2] Defendants initially argued that plaintiffs cannot maintain an equitable action for unjust enrichment where remedies at law are available, but acknowledge that relief generally can be requested in the alternative on causes of action which include claims for both equitable relief and remedies at law.

Defendants go on to assert that plaintiffs have not pleaded associational standing[3] and could not establish such standing in any event. In response, plaintiffs acknowledge that associational standing is not pled and insist that associational standing is not relied upon to establish their capacity to prosecute this action. Rather, plaintiffs assert that standing is expressly authorized by Minnesota statutes which provide them the legal right to pursue legal remedies, and plaintiffs further allege that defendants cannot prevail on their argument that standing is lacking only because circumstances are such that the associations can pass damages on to members and therefore have suffered no actual monetary injuries.

**Statutory Standing.** Plaintiffs claim that Minnesota Statutes at § 79.36(a) and (f), and § 317A.161, subd. 3,[4] grant the WCRA and the MWCIA respectively the legal right to pursue a remedy for fraudulent actions by defendants in this matter. While these statutes effectively authorize the respective associations to commence and participate in legal actions, they do not in themselves serve to establish standing to advance a cause of action in federal court without satisfying the standing requirements under Article III of the United States Constitution. Toxic Injuries Corp. v. Safety-Kleen Corp., 57 F.Supp.2d 947, 955 (C.D. Cal 1999). To the extent that plaintiffs assert standing based

---

[3] Associational or representational standing may exist where (1) members of the association would otherwise have standing to sue in their own right; (2) the interests the association seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. Carson v. Pierce, 719 F.2d 931, 934 (8th Cir. 1983).

[4] Minn. Stat. § 79.36(a) provides authorization for WCRA to "sue and be sued," and Minn. Stat. § 79.36(f) authorizes the reinsurance association to "intervene in or prosecute at any time, . . . any proceeding under this chapter or chapter 176 in which liability or the reinsurance association may, in the opinion of the board of directors of the reinsurance association or its designee, be established, or the reinsurance association affected in any other way." Authorization for MWCIA to participate in legal proceedings, as a state licensed nonprofit corporation, is found at Minn. Stat. § 317A.161, subd. 3.

upon their right to sue under Minnesota state statutes alone, their standing claim is insufficient.[5]

**Federal Standing.**   Defendants contend that plaintiffs have suffered no direct injury and therefore do not have standing to prosecute this case.  Specifically, it argued that plaintiffs have experienced no damages, and no injury in fact, because any loss resulting from premium underpayments by the defendants was distributed among other members of the plaintiff association on a *pro rata* basis. Although other association members may have reason to complain about having paid more than their proper share, the associations themselves did not suffer damages or injury in fact.  Plaintiffs respond with the assertion that this "absence of damages" claim is merely a version of a "passing on" defense which has been discredited as a basis for challenging standing.

The elements of federal standing are: 1) injury in fact, invasion of legally protected interest, concrete and particularized and actual or imminent, not conjectural or hypothetical; 2) causal connection between the injury and the conduct; and 3) likelihood that the injury will be redressed by a favorable decision.  Toxic Injuries Corp. v. Safety-Kleen Corp., 57 F.Supp.2d at 952 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560; 112 S.Ct. 2130, 2136 (1992)).  Under various procedural circumstances it has been determined that government or association entities are indeed the correct injured parties despite the ability to distribute the consequences among the component members.  In Carter v. Berger, 777 F.2d 1173 (7th Cir. 1985), the court considered RICO claims by plaintiff taxpayers who had shown that the defendants' fraud had caused the county to increase tax rates,

---

[5] Indeed, it is not readily apparent that plaintiffs' actually allege that federal standing exists as a result of the state statutes, and no case law is cited to support the proposition.  Rather, it is merely asserted that Minnesota law "authorizes" the commencement of litigation and that plaintiffs have a "legal right to pursue a remedy."

thereby increasing the plaintiffs' tax liability. The court therein determined that the taxpayers' loss was derivative, and that the taxing authority, i.e. Cook County, was the directly injured and aggrieved party. The county therefore enjoyed the right to recover from the defendants, which right is not defeated simply because compensation for the loss can be obtained from taxpayers. Id. at 1175. The court addressed the issue in the context of the "passing on" argument that is typically made in antitrust litigation and concluded that likewise in RICO cases the party that initially and directly experiences the effects of defendants' wrongdoing is the proper plaintiff, and the secondarily affected individuals or entities must obtain their relief from the directly harmed plaintiff. Carter at 1175-76. Similarly, in Terre Du Lac Ass'n, Inc. v. Terre Du Lac, Inc., 772 F.2d 467 (8th Cir. 1985), the court observed that it could find no support for an argument that an association lacks standing "merely because it may pass its alleged injuries on to its members." Id. at 473.

   Defendants insist that they are not asserting the "passing on" defense to the injury claim that is vigorously challenged by the plaintiff. Rather, defendants contend that plaintiffs simply did not suffer a loss, and therefore suffered no injury, which could thereafter be passed on to association members because the plaintiff associations merely calculated the proportionate amount owed by each member for reinsurance premiums in the case of WCRA, and operating costs for MWCIA, and the aggregate total is unaffected by underreporting of individual members. Defendants argue that there is a legally meaningful difference between instances in which the association seeks to recover additional expenses incurred as a result of the defendants' wrongful conduct, and therefore maintains standing, and the circumstances in the present case in which the association did not realize rightful income, and therefore does not have injury or standing. The court finds the argument to be wholly unpersuasive and

6

distinction unwarranted, and therefore concludes that defendants are indeed asserting a "passing on" defense. In essence, the defense argument is that plaintiffs in this case lack standing because the defendants' actions were more insidious and more subtle than the wrongful actions by defendants in those cited cases in which the passing on defense has been addressed and rejected. Furthermore, the complaint effectively establishes a claim that defendants' failure to correctly report its aggregate premiums resulted in a lower total pool of premiums, in addition to other members being charged disproportionately higher premiums. It is alleged that not only was the pie being sliced unfairly, but also the pie itself was smaller than it should have been. Consequently, the plaintiff associations' actual losses further include the additional amounts that should have been paid by the defendants, as well as WCRA's investment return on the difference. The plaintiff associations have suffered injury and have standing to prosecute this action.[6]

**Standard of Review**

   **Motion to Dismiss.** A complaint that is being challenged on motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) does not need to contain detailed factual allegations to survive the motion, but a plaintiff is obligated to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" in order to avoid dismissal. Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955, 1965 (2007)[7]  Factual allegations must be sufficient "to raise a

---

[6] Defendants do not directly assert the plaintiffs' failure to allege or satisfy other standing requirements, i.e. causal connection between the injury and the offending conduct and availability of a remedy for the injury, except to the extent that actual injury is denied.

[7] The recently espoused standard of review on Rule 12(b)(6) motion to dismiss retires and replaces the longstanding rule under which a claim survived "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [the] claim which would entitle [the plaintiff] to relief."

right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true." Twombly at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216. pp. 235-236 (3d Ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")  Moreover, a complaint is not adequate merely because the pleading "left open the possibility that a plaintiff might later establish some 'set of undisclosed facts' to support recovery." Twombly at 1968. A complaint must contain sufficient facts to state a claim that is not merely conceivable, but rather, is plausible. Id. at 1974. Also, it remains the case that a plaintiff cannot rely upon general and conclusory allegations to survive a Rule 12(b)(6) motion, Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985), but the court must presume that factual allegations in the complaint are true and accord reasonable inferences in favor of the non-moving party. Holloway v. Lockhart, 792 F.2d 760, 762 (8th Cir. 1986).

When reviewing a motion to dismiss the claim must be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor. Twombly at 1964-65. A complaint should not be dismissed simply because a court is doubtful that the plaintiff will be able to prove all of the factual allegations contained therein. Id. Accordingly, a well-pleaded complaint will survive a motion to dismiss even where the likelihood of recovery appears remote. Id. at 1965.

When matters outside the pleadings are presented with a Rule 12(b)(6) motion, and those matters are not excluded by the court, the motion should be treated as a Fed. R. Civ. P. 56

---

Holloway v. Lockhart, 792 F.2d 760, 761-62 (8th Cir. 1986)(citing Conley v. Gibson, 78 S.Ct. 99, 101-02 (1957).

motion for summary judgment. However, on a motion to dismiss for failure to state a claim, the court may consider extraneous materials that are outside the complaint if such materials are "necessarily embraced" by the pleadings. Piper Jaffray v. National Union Fire Insur. Co., 967 F.Supp. 1148, 1152 (D. Minn. 1997)(citing Vizenor v. Babbitt, 927 F.Supp. 1193, 1198 (D. Minn. 1996)). See also Parnes v. Gateway 2000, Inc., 122 F.3d 539, 546 n.9 (8th Cir. 1997). Materials which are necessarily embraced by pleadings may include copies of underlying pleadings and documents incorporated by reference. Piper Jaffray, 967 F. Supp at 1152. In addition, materials which are public record may be considered in deciding a motion to dismiss. E.E.O.C. v. American Home Products, Corp., 199 F.R.D. 620 (N.D. Iowa 2001)(citing Missouri ex rel. Nixon v. Coeur D'Alene Tribe, 164 F.3d 1102, 1107 (8th Cir. 1999)). On the other hand, "written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleading," may be construed as "matters outside the pleadings," requiring treatment of the motion as one for summary judgment. Hamm v. Rhone-Poulenc Rorer Pharmaceuticals, Inc., 187 F.3d 941, 948 (8th Cir. 1999).

The defendants in this matter have filed the Affidavit of William A. McNab[8] for purposes of submitting a document identified as "WCRA Restated Plan of Operation" as an memorandum exhibit for review by the court.[9] Plaintiffs did not submit any extraneous exhibits along

---

[8] [Docket No. 21].

[9] Defendants also submitted an Affidavit of William A. McNab with attachments along with their reply memorandum [Docket No. 28]. Each of the six attached exhibits is merely a hard copy of an unpublished or unreported case and is not the type of submission that could cause a Rule 12 motion to dismiss to be converted into a Rule 56 motion for summary judgment.

with their memorandum in opposition to dismissal, though evidentiary materials were attached to the complaint.  Review of the pleadings and the document provided by defendant reveals that the material is public record and is incorporated into the complaint by way of reference to Minn. Stat. §§ 79.34-79.35, relating to establishment of the WCRA.  In addition, plaintiffs assert no objection to the court's consideration of the materials for purposes of the Rule 12 motion to dismiss and makes no contention that the motion is ripe for summary judgment review under Rule 56.   The defendant's submission in support of dismissal pursuant to Rule 12(b)(6) does not compel the court to address this motion to dismiss under Rule 56, and the court has reviewed the document in the context of a Rule 12 motion only.

**Unjust Enrichment**

Count III of the complaint in this matter alleges that the defendants have been unjustly enriched as a result of their retention and investment of moneys that they wrongfully failed to pay to plaintiff associations, WCRA and MWCIA.  Defendants contend that plaintiffs fail to state a cause of action for which relief can be granted, whether viewed as a claim for equitable relief or for legal remedy, and the unjust enrichment claim should therefore be dismissed.  In response, plaintiffs assert that unjust enrichment has been properly pleaded through alternative requests for legal and equitable relief, a position which defendants do not contest as procedural matter.  Nonetheless, defendants insist that the claim is properly dismissed on substantive grounds because the contractual nature of the case precludes advancement of equitable unjust enrichment claims under Minnesota case law.

To prevail on a claim for unjust enrichment the plaintiff must establish that the defendant knowingly received something of value to which it was not entitled, and that it would be unjust to allow

the defendant to retain such benefit under the circumstances. P.I.M.L. v. Fashion Links, LLC, 428 F.Supp.2d 961, 973 (D. Minn. 2006)(citing Schumacher v. Schumacher, 627 N.W.2d 725, 729 (Minn. App. 2001). An unjust enrichment claim "'may be founded upon failure of consideration, fraud, or mistake, or situations where it would be morally wrong for one party to enrich himself at the expense of another.'" Id. (quoting Holmay v. CPT Corp., 457 N.W.2d 740, 745 (Minn. App. 1990). However, "'[e]quitable relief cannot be granted where the rights of the parties are governed by a valid contract.'" Id. (quoting United States Fire Ins. v. Minnesota State Zoological Bd., 307 N.W.2d 490, 497 (Minn. 1981). Concisely stated, "[u]njust enrichment is an equitable claim that 'arises when a party gains a benefit illegally or unlawfully,' and there is no valid contract completely governing the rights of the parties." Stein v. O'Brien, 565 N.W.2d 472, 474 (Minn. App. 1997)(quoting Midwest Sports Marketing, Inc. v. Hillerich & Bradsby of Canada, Ltd., 552 N.W.2d 254, 268 (Minn. App. 1996).

In the case entitled In re Workers Compensation Refund, 842 F.Supp. 1211 (D. Minn. 1994), the court noted that the WCRA is "a child of the Minnesota legislature," and that pursuant to its enabling statute, Minn. Stat. §§ 79.34 subd. 1 and 79.38 subd. 2, the association had promulgated a Plan of Operation which was binding on each association member and was formalized in a written Agreement of Reinsurance which defined the relationship between the WCRA and its members. Id. at 1213. The court determined that the relationship between WCRA and its member insurers was indeed a contractual one whose terms were defined by the Agreement of Reinsurance, the Plan of Operation, and Rules. Likewise in the present instance the parties' relationship is guided by the WCRA Restated

Plan of Operation.[10]  Although the complaint here does not directly state a cause of action for breach of contract, the existence of a plan of operation and its application in determining the relationship between the WCRA and its members, including premium payment obligations, is expressly alleged.  With respect to the relationship between the MWCIA and its members, the complaint does not allege the existence of a document directly comparable to the WCRA's Plan of Operation, but the complaint does allege that defendants are bound by MWCIA articles and bylaws.[11]

Notwithstanding the absence of a direct contract claim, under the circumstances in this case it is clear to the court that claims by both WCRA and MWCIA arise out of the contractual relationship which governs the rights and obligations of the parties in this matter, and the equitable claim of unjust enrichment therefore cannot lie.  Stein v. O'Brien, 565 N.W.2d at 474 (Minn. App. 1997). Furthermore, the mere fact that RICO and common law fraud counts are alleged does not abrogate the contract, and even though unjust enrichment may properly be alleged as a alternative grounds for relief under circumstances in which the underlying contract is ambiguous or its existence is called into question, in the present matter neither the existence of an express agreement, nor the ambiguity of such instrument, is at issue.  See  P.I.M.L. v. Fashion Links, LLC, 428 F.Supp.2d at 973.  This action is grounded in contract and the Count III claim of unjust enrichment should be dismissed.

**RICO**

**Enterprise.**  Defendants argue that the complaint in this matter fails to state a claim for

---

[10] Affidavit of William A. McNab, Exh. 1.

[11] Complaint, ¶ 23.

RICO violations under 18 U.S.C. §1962(c)[12] or 18 U.S.C. §1962(d),[13] because the pleading does not allege a legally sufficient "enterprise" having the characteristics necessary to constitute such an entity. Furthermore, in the context of the "enterprise" argument the defendants contend that plaintiffs cannot be both the enterprise itself and the victim of racketeering activity; the complaint does not allege a common or shared purpose; and the complaint allegations suggest that any prohibited acts by defendants were independent of the enterprise. Defendants further assert a failure to satisfy pleading requirements regarding required "conduct" under the RICO statutes whereby the defendant must have at least some role in directing or managing enterprise affairs. Finally, it is argued that the Count II conspiracy claim under 18 U.S.C. § 1962(d) cannot survive in the absence of a valid claim under 18 U.S.C. § 1962(c).

An associated-in-fact enterprise consisting of WCRA and MWCIA and their members is expressly alleged in ¶¶ 43 and 49 of the complaint. A RICO "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group or individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Schuster v. Anderson, 413 F.Supp.2d 983, 999 (N.D. Iowa 2005)(citing Bennett v. Berg, 685 F.2d 1053, 1060 n.9 (8th Cir 1982), and United States v. Turkette, 452 U.S. 576, 581-82, 101 S.Ct. 2524 (1981)). The enterprise is not itself the "pattern of racketeering activity," but rather is an entity separate from the pattern of

---

[12] 18 U.S.C. §1962(c) states:
   It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

[13] 18 U.S.C. §1962(d) states:
   It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

13

activity in which it engages, and the existence of an enterprise is a separate element to be proved. Schuster at 1000 (citing Turkette, 452 U.S. at 583, 101 S.Ct. 2524).  The associated-in-fact enterprise may consist of constituent entities, so long as the separate entities function together as an ongoing unit of which the defendant is a part.  Id.  The characteristics which define an associated-in-fact enterprise (as well as a "legal entity" enterprise) are:  (1) a common or shared purpose; (2) some continuity of structure or purpose; and (3) a structure distinct from that inherent in a pattern of racketeering.  Id. (citing United States v. Kragness, 830 F.2d 842, 855 (8th Cir. 1987)(additional citations omitted).

> The complaint in this action describes the enterprise as:
>
> "consisting of the WCRA, its Members, MWCIA, [having] an ongoing, formal structure embodied in WCRA's Plan of Operation, operating rules, the Minnesota statutes setting forth WCRA's powers and responsibilities, the Articles of Incorporation and Bylaws of MWCIA, and the Minnesota statutes setting forth the powers and responsibilities of data service organizations."[14]

The complaint also states that the structure of the enterprise and the common purpose of the enterprise are continuing, though the composition changes, and that the enterprises exists apart form the pattern of racketeering activity.[15]  Plaintiffs' pleading generally describes the purposes of the enterprise, i.e. collection of workers compensation premium information and calculations of reinsurance premiums,[16] and generally described the methodology of defendants' alleged wrongdoing as the submission of

---

[14] Complaint, ¶ 50.

[15] Id.

[16] Complaint, ¶ 52.

fraudulent data which caused WCRA and MWCIA to calculate premiums and assessments that were too low for the defendants and too high to other insurers. Moreover, the complaint alleges a pattern of racketeering activity consisting of numerous violations of federal mail fraud and wire fraud statutes involving the submission of fraudulent data for the purpose of avoiding payment of full premiums and assessments that were lawfully due over a 20-year period.[17] Numerous separate and specific incidents of alleged mail fraud and wire fraud are cited in the pleading.[18]

The court concludes that complaint alleges with sufficient particularity the existence of an enterprise and that the pleading further alleges a pattern of racketeering activity that is separate from the enterprise and the pattern of activity in which such enterprise is lawfully engaged. Indeed, the complaint properly and sufficiently alleges the individual elements of common or shared purpose, i.e. the collection of workers' compensation insurance premiums and premium data as authorized by Minnesota statutes; continuity of structure and purpose; and a structure distinct from that inherent in a pattern of racketeering. Such allegations are supported by descriptions of factual and/or legal circumstances which rise well above the level of speculation as necessary to survive Rule 12(b)(6) motion to dismiss.

**Enterprise and Victim.** Defendants make a broad assertion that plaintiffs cannot be both the victim of RICO activity and the enterprise through which the racketeering activity took place. The defendants' reference to Nat'l Org. for Women v. Scheidler, 510 U.S. 249 (1994) is unremarkable for the asserted legal proposition with respect to the mere statement that "the 'enterprise'

---

[17] Id., ¶ 54.

[18] Id., ¶ 55(a-bbbbbb), ¶ 57(a-e).

in [§ 1962(c)] connotes generally the vehicle through which the unlawful pattern of racketeering activity is committed, rather than the victim of that activity." Id. at 259.  Rather, the concerns which arise as a result of the defendants being a part of the "associated-in-fact enterprise" are more appropriately considered in the context of those "rare instances" in which the operations or management test would be satisfied because the wrongdoers were able to associate with the enterprise by exerting control through methods other than "'operation or management,'" such as, "for example, by bribery."  Jaguar Cars, Inc. v. Royal Oak Motor Car Co., Inc., 46 F.3d 258, 267 (3rd Cir. 1995)(quoting Reves v. Ernst & Young, 507 U.S. 170, 184, 113 S.Ct. 1163, 1173 (1993)).  The court finds that the claim in the present action represents one of those instances in which it is sufficiently alleged that control is exerted by a method other than actions by upper level management for purposes of establishing associated-in-fact enterprise.  It is not critical whether the alleged enterprise is itself a victim or not, but a RICO enterprise may exist as the "'vehicle'" through which the unlawful pattern of racketeering is committed.  Dewit v. Firstar Corp., 904 F.Supp. 1464, 1519 (N.D. Iowa 1995)(citing Jaguar Cars, Inc. at 266).  The complaint in this matter alleges such a vehicle for the commission of racketeering.

**Common or Shared Purpose.**  Defendants argue that complaint fails to allege a common or shared purpose as needed to establish an association-in-fact enterprise because the enterprise and the defendants had contradictory objectives.  The complaint alleges that the enterprise participants had a common purpose of collecting workers' compensation premiums and data for purposes of rate making and reinsurance premium calculations.  Whether the defendants and the enterprise shared an interest in obtaining the same lawfully determined results with respect to rate making and premiums is, of course, an issue on which a determination is yet to be made, but a common

16

purpose of collecting <u>some</u> data and premiums is adequately alleged in the pleading. The complaint is not deficient with respect to an allegation of common or shared purpose.

**Operation or Management.** Defendants contend that the "conduct requirement of 18 U.S.C. § 1962(c) requires that the complaint allege a right to recovery only against persons who actually participate in the operation or management of the enterprise. This assertion has been discussed above in the context of whether the plaintiffs can be both the victim of RICO activity and the enterprise through which the racketeering activity took place, and the court has determined that the complaint is indeed sufficient in that regard. <u>Dewit v. Firstar Corp.</u>, 904 F.Supp. at 1519. Specifically, the complaint alleges defendants' involvement in the enterprise to the extent that they played a part in the direction of the affairs of such enterprise, thereby satisfying the requirements of § 1962(c). <u>Handeen v. Lemaire</u>, 112 F.3d 1339, 1348 (8th Cir. 1997)(citing <u>United States v. Darden</u>, 70 F.3d 1507, 1543 (8th Cir. 1995).

**Conspiracy Count.** Defendants argue that plaintiffs' Count II conspiracy claim under 18 U.S.C. § 1962(d) is not sufficiently alleged in the complaint because a legally cognizable RICO claim under § 1962(c) has not been alleged. As the court has previously discussed and determined herein, the complaint in this action does state a RICO claim under § 1962(c). The RICO provisions at § 1962(c) and § 1962(d) essentially go hand in hand such that where a claim is properly alleged under subsection (c), a subsection (d) claim is likewise sufficiently alleged. <u>Dewit v. Firstar Corp.</u>, 904 F.Supp. at 1520 ("if plaintiffs have sufficiently alleged an association-in-fact RICO enterprise, their allegations of a RICO conspiracy by persons of involved in that enterprise is sufficient to sustain the conspiracy claim over objections that it is futile.") The court finds that a RICO conspiracy claim has

been alleged and dismissal of Count II is precluded for that reason.

## RECOMMENDATION

For the reasons stated above, it is hereby **recommended** that defendant's motion to dismiss for lack of standing, and pursuant to Fed. R. Civ. P. 12(b)(6), failure to state a claim upon which relief can be granted, be **granted in part and denied in part** [Docket No. 13]. Defendants' motion to dismiss all counts in the complaint for lack of standing should be **denied**; defendants' motion to dismiss RICO claims alleged in Count I and Count II should be **denied**; and defendants' motion to dismiss the Count III unjust enrichment claim should be **granted**. In the event that this action to survives the motion to dismiss, defendants should be ordered to file their answer(s) to the complaint within 20 days following issuance of the district court's order.

Dated:     February 28, 2008

    s/Arthur J. Boylan
Arthur J. Boylan
United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before March 13, 2008.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.